IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER MIR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-2766-B |
| | § | |
| L-3 COMMUNICATIONS | § | |
| INTEGRATED SYSTEMS, L.P., | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Peter Mir ("Mir" or "Plaintiff") has filed a Motion to Compel Defendant's OFCCP Position Statement and Other Submissions [Dkt. No. 18] (the "MTC"), seeking an order under Federal Rule of Civil Procedure 37(a) to require Defendant L-3 Communications Integrated Systems, L.P. ("Defendant" or "L-3") to produce to Mir copies of L-3's submissions to the U.S. Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") during its investigation of L-3's alleged discrimination against Mir.

United States District Judge Jane J. Boyle referred Defendants' Second MTC to the undersigned United States magistrate judge for determination. *See* Dkt. No. 20.

L-3 filed a response, *see* Dkt. No. 22, and Mir filed a reply, *see* Dkt. No. 25.

For the reasons and to the extent explained below, the Court GRANTS Plaintiff's Motion to Compel Defendant's OFCCP Position Statement and Other Submissions [Dkt. No. 18].

-1-

**Background**

Mir, an engineer, applied for a position with L-3. After an interview, L-3 did not award the job to Mir, and Mir filed an Administrative Complaint with the OFCCP, alleging violations of Section 503 of the Rehabilitation Act ("Section 503") and the Americans with Disabilities Act ("ADA") based on L-3's status as a federal contractor. The OFCCP has jurisdiction to investigate discrimination complaints leveled against federal contractors.

During the OFCCP's investigation of Mir's complaint, L-3 provided the OFCCP with a position statement as well as several follow up communications. L-3 contends that it provided these documents under the assurance that, in accordance with the OFCCP's regulations and longstanding practice, L-3's documents would remain confidential.

Following its investigation, the OFCCP issued a finding that there was insufficient evidence to conclude that L-3 violated its obligations under Section 503 and the ADA and issued a right-to-sue letter enabling Mir to bring a lawsuit against L-3 under the ADA within 90 days.

Mir then filed this action against L-3, alleging a violation of the ADA. Once discovery began, Mir served document requests. In Request No. 18, Mir asked for "[a]ll documents you submitted to the OFCCP concerning Peter Mir's complaint to the OFCCP." In Request No. 19, he asked for "[a]ll communications between you and the OFCCP concerning Peter Mir's complaint to the OFCCP."

L-3 objected to both requests on grounds of work-product protection and

explained that it was withholding documents. L-3's privilege log reflects that it is withholding four documents that comprise 55 pages of materials submitted to the OFCCP as protected work product.

Mir now moves to compel production of these withheld documents, asserting that L-3 has the burden to establish work-product protection over each document and that, even if the documents are work product, any protection has been waived by handing them over to the OFCCP and, as to L-3's position statement submitted to the OFCCP, also by putting L-3's justification for not hiring Mir at issue in this case.

L-3 responds that the withheld documents clearly contain the mental impressions, conclusions, opinions, and legal theories of L-3's legal counsel acting squarely within her capacity as L-3's representative and are thus subject to work-product protection; that L-3 did not waive its work-product protection by turning these documents over to the OFCCP because it did so with a clear expectation of confidentiality pursuant to its contractual relationship with the federal government; and that the documents themselves have not been put at issue in this litigation because L-3 asserts that it refused to hire Mir for legitimate reasons.

## Legal Standards

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34. *See* FED. R. CIV. P. 37(a)(3)(B)(iv).

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). In response to a Rule 34 request, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C). A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). And the "party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).

A party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of its objection to a request, and, if it does not, it waives the objection. *See Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 (D. Kan. 2004); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

The following standards govern L-3's assertion of work-product protection over

the withheld documents:

> [T]he issue of whether documents are exempt from discovery under the attorney work product doctrine is governed by federal law.... The federal work product doctrine, as codified by Federal Rule of Civil Procedure 26(b)(3), provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." A document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection. But "the primary motivating purpose" behind the creation of the document must be to aid in possible future litigation. As the advisory committee notes to Rule 26(b)(3) make clear, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."
>
> Among the factors relevant to determining the primary motivation for creating a document are "'the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.'" If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation.
>
> Like all privileges, the work product doctrine must be strictly construed. The burden is on the party who seeks work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial. A general allegation of work product protection is insufficient to meet this burden. Instead, "'a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection.'" The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product. Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the work product exemption still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." In fact, "'resort to *in camera* review is appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible.'"

*Orchestrate HR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2014 WL 884742, at *2 (N.D.

Tex. Feb. 27, 2014) (citations omitted).

"If a party meets its burden and proves that the materials sought warrant work product protection, the party seeking discovery must prove why those materials should still be produced." *Brady*, 238 F.R.D. at 443. Rule 26(b)(3) instructs the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." FED. R. CIV. P. 26(b)(3). A party may only obtain discovery of documents prepared in anticipation of litigation or for trial upon showing that the party seeking discovery has (1) substantial need of the materials to prepare for his or her case and (2) that the party cannot obtain the substantial equivalent of the materials by other means without undue hardship. *See id.* And the work-product rule accords "special protection to work-product revealing the attorney's mental processes." *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981). As such, "if the materials sought are opinion work-product then a court may compel discovery only if the party seeking the materials demonstrates a compelling need for the information." *Brady*, 238 F.R.D. at 443; *accord S.E.C. v. Cuban*, No. 3:08-cv-2050-D, 2012 WL 456532, at *2 & n.3 (N.D. Tex. Feb. 10, 2012).

Federal Rules of Civil Procedure Rules 26(b) and 26(c) and 34 have been amended, effective December 1, 2015. Rule 26(b)(1) now provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative

access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The amendments to Rules 26 and 34 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending. The Court finds that applying the standards of Rules 26 and 34, as amended, to Plaintiff's MTC is both just and practicable.

Further, for the reasons the Court has recently explained, the Court concludes that the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See Carr v. State Farm Mutual Automobile Insurance Company*, 312 F.R.D. 459, 463-69 (N.D. Tex. 2015). Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). Thus, as amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local

rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The party seeking discovery, to prevail on a motion to compel, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing.

And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; is subject to Rule 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (i)

consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3); *see generally Heller v. City of Dallas*, 303 F.R.D. 466, 475-77, 493-95 (N.D. Tex. 2014).

But the amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to – in order to successfully resist a motion to compel – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or that a discovery request would impose an undue burden or expense or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303 F.R.D. at 483-93.

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (I) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without

court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A).

Federal Rule of Civil Procedure 37(a)(5)(B)-(C) further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C).

## Analysis

I. <u>L-3 established work-product protection over the withheld documents.</u>

L-3 contends that it properly invoked the work-product protection doctrine in response to Mir's requests for production because the withheld documents are precisely the types of tangible documents prepared by a party's attorney that the work-product doctrine is intended to protect. More specifically, L-3 asserts that, through the Declaration of Leslie Selig Byrd [Dkt. No. 23], it has carried its burden to invoke the work-product doctrine regarding the position statement and certain other communications with the OFCCP.

As to the position statement, L-3 contends that Leslie Selig Byrd and the Bracewell LLP law firm were retained by L-3 as counsel to represent L-3 regarding Mir's OFCCP Complaint, where the position statement was prepared in response to Mir's particular complaint at the request of the OFCCP, not in any ordinary course of business, and where the position statement provides the following general information: (i) a description of the position that Mir applied for at L-3; (ii) a description of Mir's application to L-3 and the reasons that he was not a successful candidate for the position; (iii) a description of Matthew LaBove's application for the position, and the reasons that he was offered the position; (iv) a description of other candidates that applied for the position; and (v) L-3's response to the allegations raised by Mir. L-3 argues that the position statement clearly reflects L-3's legal counsel's mental impressions, conclusions, opinions, and legal theories.

L-3 contends that it has also carried its burden to invoke the work-product doctrine regarding the three documents containing correspondence between Ms. Byrd and the OFCCP. According to L-3, Document 2 listed on L-3's Original Privilege Log is a February 7, 2013 email that Ms. Byrd sent to Fay Cakarnis, a Compliance Officer with the OFCCP Dallas District Office, answering a follow-up question by the OFCCP, and the email specifically concerned Chad Grant's position at L-3, and the salary range for the position that Mir applied for. As a result, L-3 argues, the email contains L-3's legal counsel's conclusions and opinions.

L-3 likewise asserts that Document 3 listed on L-3's Original Privilege Log is a February 26, 2013 email that Ms. Byrd sent to Fay Cakarnis answering another

follow-up question, which specifically relates to Chad Grant's change in responsibilities in February 2012, and that the email therefore contains L-3's legal counsel's conclusions and opinions.

Finally, L-3 contends that Document 4 listed on L-3's Original Privilege Log is a September 19, 2013 email that Ms. Byrd sent to Allen Boyd, District Director of the OFCCP Dallas District Office regarding a conciliation meeting with the OFCCP and that, as a result, the email contains L-3's legal counsel's conclusions and opinions.

L-3 reports that, as with the position statement, these documents were created by Ms. Byrd in her capacity as L-3's attorney, in the course of her representation regarding Mir's OFCCP Complaint, and not in the ordinary course of business, and that all of these documents were also created to aid in possible future litigation. L-3 notes that OFCCP regulations mandate that, following a finding of "no violation" after its investigation into a complaint, the OFCCP must issue a right-to-sue letter under the ADA and that, accordingly, during the investigation with the OFCCP, L-3 retained counsel to gather information and present its position, fully aware that possible future litigation could ensue.

The Court notes that "[d]ocuments produced for the Office of Federal Contract Compliance Program have been held to be prepared in anticipation of litigation and protected as work product," *Abdallah v. Coca-Cola Co.*, No. CIV A1:98CV3679RWS, 2000 WL 33249254, at *5 (N.D. Ga. Jan. 25, 2000) (citing *West v. Marion Labs*, No. 90-0661-CV-W-2, 1991 WL 517230, at *3 (W.D. Mo. Dec. 12, 1991)), and finds and concludes that L-3 has established work-product protection over all four withheld

documents at issue.

II.    <u>Mir has established waiver by L-3's submissions to the OFCCP.</u>

Mir contends that, even if the four withheld documents are work product, any protection has been waived by L-3's handing them over to the OFCCP.

The work-product doctrine is very different from the attorney-client privilege with regard to possible waiver. Although the attorney-client privilege exists to protect the confidential communications between an attorney and client and, thus, is generally waived by disclosure of confidential communications to third parties, the work-product protection exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). "Therefore, the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Id.* That is, "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000). But such a "disclosure does waive protection if it has substantially increased the opportunities for potential adversaries to obtain the information." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (internal quotation marks omitted). And, for example, "the work product privilege is waived when the attorney requests the witness to disclose the information or when the attorney discloses the information to the court voluntarily or makes no objection when it is offered." *Shields*, 864 F.2d at 382.

"Unlike the attorney-client privilege, the burden of proving waiver of work product immunity falls on the party asserting waiver." *Brady*, 238 F.R.D. at 444; *accord Ecuadorian Plaintiffs*, 619 F.3d at 379 & n.10 (party asserting work-product protection is not required to prove non-waiver). "If the party is successful, waiver of work product immunity will be limited to the materials actually disclosed." *Brady*, 238 F.R.D. at 444.

"What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances." *United States v. Nobles*, 422 U.S. 225, 239 n.14 (1975). One judge in this circuit recently explained that "[t]he relevant case law on this issue was recently and cogently summarized as follows":

> The issue of whether a waiver has occurred has frequently arisen when disclosure of work product is made to a governmental authority – usually a law enforcement agency. A waiver will be found if the governmental agency was an adversary, a "potential adversary" or even just "stood in an adversarial position" with respect to the disclosing party. In other instances, the issue is decided based on whether the disclosure to the governmental agency would "materially" or "substantially" increase the likelihood that the disclosing party's adversary would obtain the information – regardless of whether the governmental agency was itself in an adversarial position to the disclosing party.
>
> The doctrine has been softened by those courts recognizing that when material is disclosed to the government under an express agreement that it be kept confidential, the disclosure will not waive later assertions of work product protection. In addition, courts have also found no waiver when the disclosure of information to the government was to assist in litigation against a common opponent.

*Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, No. Civ. A. 11-2777, 2013 WL 3367137, at *5 (E.D. La. July 5, 2013) (citations omitted). For example, one "court held that information shared with a government agency having a common interest against a

third party did not constitute waiver of the work product privilege because the governmental agency was not an adversary and the disclosure of the information to the governmental agency did not substantially increase the likelihood that an adversary would come into possession of the information." *Wi-Lan, Inc. v. Acer, Inc.*, No. 207CV473TJW, 2010 WL 4118625, at *5 (E.D. Tex. Oct. 18, 2010) (citing *United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285, 1290 (D.C. Cir.1980)).

But one judge on this Court has held that, "[e]ven if confidential work product is produced to a potential adversary under a confidentiality agreement, that will not alter the objective fact that confidentiality has voluntarily been breached. Under those circumstances, the disclosure is still a waiver of work product immunity," although "waiver is limited to the documents actually disclosed." *Brady*, 238 F.R.D. at 444 (citation omitted). On the other hand, "at least one court in this [circuit] has held that the presence of a written nondisclosure agreement preserves work product protection." *United States v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016); *cf. Fractus, S.A. v. Samsung Elecs. Co.*, No. 6:09CV00203, 2011 WL 13076782, at *3 (E.D. Tex. Jan. 20, 2011) (no waiver where disclosure to third party was not to an adversary and was subject to a mutual confidentiality agreement "intended to prevent disclosure of the materials to third parties").

And what is apparently one of the only decisions to analyze the issue of waiver by disclosure to the OFCCP reasoned as follows:

> The second question to address is whether disclosure of the privileged documents to a third party constitutes a waiver of the work product privilege. In *GAF Corp. v. Eastman Kodak Co.*, 85 F.R.D. 46, 52

-15-

(S.D.N.Y.1979), the court held that disclosure to a third party does not constitute waiver unless "such disclosure substantially increases the possibility that an opposing party could obtain the information disclosed."

In the present case, even though the OFCCP is in possession of the privileged information, defendant has not substantially increased the chance that plaintiff will be able to gain access to the documents. As argued previously by defendant, the OFCCP is prohibited from releasing information gained during the course of review or while an enforcement action is in progress if the request falls within the exemptions in the regulation. 41 CFR § 60-40.3(a)(5). Although there has been no formal decision by the OFCCP to withhold these documents from plaintiff, defendant points out that plaintiff has already made several unsuccessful attempts to gain this information from the OFCCP.

Finally, plaintiff may obtain discovery of documents protected by the work product privilege if plaintiff can show a substantial need for the materials and an undue hardship. Rule 26(b)(3), Fed. R. Civ. P.; *Baise v. Alewel's, Inc.*, 99 F.R.D 95 (D.C. Mo. 1983). Plaintiff's motion does not state the basis of need or potential hardship for discovery of these particular documents. Without this information, the Court cannot grant plaintiff's request for production of the documents. Therefore, plaintiff's request will be denied because the OFCCP documents are protected by the work product privilege.

*West*, 1991 WL 517230, at *3-*4.

Mir contends that any work-product protection is waived whenever the work product is disclosed to an adversary or treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material; that the OFCCP investigation was an inherently adversarial proceeding, with litigation by the federal government an eventual possibility; and that there were no limits on the OFCCP's ability to disclose this information to Mir and that, indeed, some of L-3's position was revealed in the agency's communications with Mir. According to Mir, under the record presented here, any work-product protection that might have protected L-3's defensive contentions were waived the moment that they were revealed

to the adverse federal agency.

L-3 responds that it has not waived its work-product protection because it submitted documents to the OFCCP with a clear expectation of confidentiality, during an OFCCP investigation made pursuant to a contractual covenant between L-3 and the federal government. L-3 points to the *West* decision quoted above that held that a party does not waive its work-product privilege when it submits documents to the OFCCP during an employment discrimination investigation. And L-3 notes that certain OFCCP regulations, 41 C.F.R. §§ 60-40 *et seq.*, relied on in *West* are still in effect and presumably were relied on by the OFCCP in refusing to produce these documents to Mir in response to a Freedom of Information Act ("FOIA") request to the OFCCP that Mir made seeking the OFCCP's complaint file on his administrative action. Accordingly, L-3 argues, it submitted documents to the OFCCP under the assurance that, per the OFCCP's regulations, its documents would only be released specifically in accordance with the rules, regulations, and exemptions of the Freedom of Information Act, and the OFCCP specifically withheld documents from Mir based on its obligations under FOIA. And L-3 further notes that both L-3 and Mir were appraised during the OFCCP investigation that L-3's submissions to the OFCCP would be treated confidentially.

L-3 argues that, despite Mir's one-sided presentation of the issue, precedent on the issue of waiver in the context of disclosure to a government agency has received different treatment by different courts, and L-3 notes that a judge in the Eastern District Louisiana recently examined this issue and cited that summary in in the

*Baricuatro* decision quoted above of the mixed case law regarding waiver in the context of information turned over to government agencies. And L-3 asserts that, although the judge in *S.E.C. v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006), found that turning over documents to the U.S. Securities and Exchange Commission ("SEC") under a confidentiality agreement could constitute waiver of work-product immunity with regard to those documents, there are several distinguishing features of that decision.

L-3 also argues that Mir cannot show waiver under the governing standard because no disclosure inconsistent with maintaining secrecy took place in this case where, per the OFCCP's regulations relied on by L-3, the OFCCP explicitly maintained the secrecy of these documents when it refused to turn them over to Mir in response to his FOIA request.

And L-3 contends that an investigation by the SEC or the Department of Justice ("DOJ") is fundamentally different from an investigation by the OFCCP and that holding otherwise would frustrate the purpose of the OFCCP regulations. L-3 argues that, were the Court to find that L-3 waived its privilege by turning over documents to the OFCCP, it would undermine the confidentiality regulations, provisions, and practices adopted by the OFCCP in its investigatory process and that a waiver finding would necessarily have a chilling effect on the nature and extent to which parties – both contractors and employees – are willing to reveal their positions to the OFCCP during the initial investigatory process.

Mir replies that, although the United States Court of Appeals for the Fifth Circuit has not directly addressed the issue, the overwhelming weight of authority –

-18-

including cases from at least the First, Sixth, Eighth and Tenth Circuit – establishes that work-product protection is waived when a party discloses information to a federal agency during an adversarial investigation that could ultimately lead to an enforcement action.

Mir contends that expectations of confidentiality are utterly irrelevant to the waiver calculus and that, even if they were not, the government's FOIA obligation (or exemption) as to the general public has nothing to do with whether L-3's alleged work-product protection evaporated the moment that L-3 submitted materials to a potential litigation adversary.

Mir further asserts that 41 C.F.R. § 60-40.3(a)(5) does not support L-3's claim of work-production protection because that regulation exempts from compulsory FOIA disclosure "[c]ompliance investigation files ... during the course of the review to which they pertain or while enforcement action against the contractor is in progress or contemplated within a reasonable time." Mir argues that the OFCCP's review ended when it issued Mir a right-to-sue letter and that there is no "enforcement action" against L-3 in progress. According to Mir, this regulation in no way assures an OFCCP investigation target that its submissions will perpetually enjoy secrecy, and L-3 could never have reasonably had an expectation that its position statement would forever remain hidden from Mir.

Mir also replies that the *West* decision "hangs on a very thin branch," where it "contains almost no discussion and relies primarily on an old New York case, *GAF Corp. v. Eastman Kodak Co.*, 85 F.R.D. 46, 52 (S.D.N.Y. 1979), and the regulation, 41

C.F.R. § 60-40.3(a)(5)," which Mir contends that the *West* court misread just as L-3 does because "the regulation permits the OFCCP to withhold its investigative file only while its investigation is still ongoing or if the federal agency is pursuing an enforcement action; afterwards, it has no applicability whatsoever." Dkt. No. 25 at 3-4. Further, Mir contends, *West*'s reliance on *GAF Corp.* is even worse for L-3 because *GAF Corp.*'s waiver analysis was abrogated more than twenty years ago in *In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993). According to Mir, the Second Circuit there, after assessing the intra-circuit conflict about whether "disclosure of attorney work product in connection with a government investigation waives the privilege in later civil discovery," *id.* at 233, held that, "[a]t the time of the submission ..., the SEC and Steinhardt stood in an adversarial position. Steinhardt's voluntary submission ... waived the protections of the work product doctrine as to subsequent civil litigants seeking the memorandum from Steinhardt," *id.* at 236.

Mir further replies that L-3 did not explain how statements to the SEC and DOJ are different from those made to the OFCCP and that "L-3 has not even responded to Mir's argument that OFCCP proceedings are inherently adversarial, that its investigative authority is coterminous with the EEOC's, and that the OFCCP can pursue or authorize administrative or other litigation against the respondent, including seeking relief declaring the company ineligible for future federal contracts." Dkt. No. 25 at 4-5.

Mir asserts that "L-3 waived any work product privilege by providing the withheld documents to an adversarial federal agency in the course of an adversarial

investigation." *Id.* at 5.

The Court agrees and concludes that Mir has met his burden to establish waiver of work-product protection by L-3's voluntary disclosure of the four documents at issue to the OFCCP. L-3's submission to the OFCCP at the time that the OFCCP was a potential adversary substantially increased the opportunities for potential adversaries to obtain the information, particularly where the FOIA regulations on which L-3 relies only exempt such submissions from disclosure during the course of the review to which they pertain or while enforcement action against the contractor is in progress or contemplated within a reasonable time. Accordingly, even if an express agreement that information be kept confidential were relevant in an analysis of waiver based on disclosure to a governmental authority, Mir has persuasively shown that L-3 had no reasonable expectation that these materials would never be disclosed to Mir during the course of an action such as this. And the promises of confidentiality to which L-3 points are not inconsistent with disclosure to Mir – as opposed to the general public – of these materials. *Cf. Moore, II v. Shands Jacksonville Med. Ctr., Inc.*, No. 3:09-CV-298-J-34TEM, 2010 WL 5137417, at *2 (M.D. Fla. Dec. 10, 2010).

III.   <u>Mir has not established waiver under an at-issue theory.</u>

Mir also contends that, as to L-3's position statement submitted to the OFCCP, any work-product protection has been waived by putting L-3's justification for not hiring Mir at issue in this case.

"Like the attorney client privilege, opinion work product may be disclosed when the holder waives the protection by placing the protected material 'at issue' in the

litigation." *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, No. Civ. A. 11-633-JJB-RLB, 2014 WL 29451, at *7 (M.D. La. Jan. 3, 2014).

Thus, for example, courts have held that, where a defendant relies on an internal investigation to defend against a plaintiff's claims of sexual harassment and of retaliation and has cited to the investigation to show that it exercised reasonable care to promptly correct any harassing behavior, the defendant has waived any applicable privilege or work-product protection with respect to the investigative report and any underlying documents. *See, e.g., Williams v. U.S. Envtl. Servs., LLC*, No. CV 15-168-RLB, 2016 WL 617447, at *5 (M.D. La. Feb. 16, 2016); *see also Butler v. La. Dep't of Pub. Safety & Corr.*, No. Civ. A. 12-420-BAJ-RLB, 2014 WL 3866100, at *6-*7 (M.D. La. Aug. 6, 2014) ("And so, the Court finds that by raising the affirmative defense of business necessity and by citing Dr. Davis' approval of the 2013 FFDE request to bolster that defense, Defendant has placed all of the documents provided to Matrix, including the Memo, at issue in the litigation. Therefore, Defendant has waived both the attorney-client privilege and work product protection as to the Memo, and it must be produced."); *Liberty Mut. Ins. Co. v. Tedford*, 644 F. Supp. 2d 753, 764 (N.D. Miss. 2009) ("Where a party puts in issue an attorney's opinion or work product ... both the attorney-client privilege and protections afforded by the work product doctrine are waived.").

More generally, the Fifth Circuit has suggested that waiver may occur where "a party has asserted a claim or defense that explicitly relies on the existence or absence of the very communications for which he claims a privilege." *In re Burlington N., Inc.*,

822 F.2d 518, 533 (5th Cir. 1987).

Mir asserts that a party may waive work-product protection when it puts the work product itself at issue in this case, where it is axiomatic that a litigant cannot use the work-product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion. Mir contends that, thus, a general subject-matter waiver may be warranted when facts relevant to a narrow issue are in dispute and have been disclosed in such a way that it would be unfair to deny the other party access to facts relevant to the same subject matter.

Mir explains that L-3's fifth defense is that "all employment actions taken by Defendant were for legitimate, nondiscriminatory reasons" and that those reasons – one version of which Mir presumes is found in the position statement – will surely rest at the heart of L-3's eventual motion for summary judgment, in which L-3 will likely offer an explanation for why it did not hire Mir and then challenge him to demonstrate that its excuse is pretextual. But, according to Mir, L-3 is not compelled to offer such an excuse and need only provide one if it wishes to avoid the presumption of discrimination that will arise from Mir's *prima facie* case. Mir asserts that the very integrity of L-3's assertions to the OFCCP are implicated by any proffer of an excuse in this litigation, a proffer that plainly underlies L-3's fifth pleaded defense, such that L-3 should not be permitted to make assertions to the Court about why it did not hire Mir without implicating the existence and veracity of its prior assertions to the OFCCP on the same subject.

Mir therefore argues that, if L-3 wants to inject its excuses for not hiring Mir into this case, its prior discourse on those excuses must be open to either impeachment or corroboration and that the Court should therefore compel production of the position statement.

L-3 responds that its defense has not somehow injected the position statement itself as an issue in this case. According to L-3, this absurd argument would result in injecting every document created by a party's attorney, that is otherwise protected as work product, into the case if it concerned or related to one of the party's defenses and would, in effect, destroy work-product protection altogether.

L-3 notes that Mir cites no decisions by any court that found a defendant's work product was itself an issue in a case merely because the authenticity of the employer's proffered reason was an issue in that case. L-3 contends that, unless it attempts to use the position statement itself in this litigation, the position statement remains protected as work product and that Mir has failed to demonstrate that the position statement itself is an issue in this case.

Mir replies that the United States Supreme Court, in the seminal decision on work product in *Hickman v. Taylor*, 329 U.S. 495 (1947), cautioned that work product might well "be useful [and producible] for purposes of impeachment or corroboration." *Id.* at 511. Mir notes that "[t]his is a discrimination case, one where Mir reasonably expects L-3 to eventually demand judgment under Rules 50 or 56 because it i) asserts a legitimate, non-discriminatory reason and ii) contends that Plaintiff cannot demonstrate that the reason is pretextual. But nothing compels Defendant to put an

excuse at issue in this case. After all, it could choose to defend itself by simply challenging Mir's ability to demonstrate a *prima facie* case, and eschewing any assertion of an excuse. While an unrebutted *prima facie* case would entitle Mir to judgment as a matter of law, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993), it fundamentally remains that injecting an excuse into this case is simply a matter of strategic choice, as it is in virtually every discrimination case." Dkt. No. 25 at 5.

According to Mir, "[i]f L-3 wishes to present a supposed excuse in this case, then it must not be allowed to hide behind privilege to keep Mir (and this Court) from knowing if it previously told the federal government a completely different story, or perhaps a different version that is inconsistent with its litigation position or what the witnesses have to say," where a pretext inquiry focuses on the authenticity of the employer's proffered reason" *Id.* at 6. Mir asserts that, "unless L-3 is prepared to assure the Court that it will defend this case only on Plaintiff's ability to establish a *prima facie* case, then it should be required to disclose whatever excuses it offered the federal government while under investigation." *Id.*

The Court disagrees that L-3 has waived work-product protection under an at-issue theory. L-3 has not raised a defense that explicitly relies on the existence or absence of the position statement, and, in fact, Mir only asserts that he is entitled to this document for possible impeachment or corroboration. Mir's arguments do not properly sound in an at-issue theory of waiver, and Mir does not attempt to obtain the materials by a showing of substantial need and inability to obtain the substantial

equivalent by other means without undue hardship.

IV.    <u>The Court will not award expenses under Rule 37(a)(5).</u>

Under Federal Rules of Civil Procedure 37(a)(5), the Court determines that, under all of the circumstances presented here, Mir and L-3 should bear their own expenses, including attorneys' fees, in connection with Plaintiff's MTC.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS Plaintiff's Motion to Compel Defendant's OFCCP Position Statement and Other Submissions [Dkt. No. 18]. L-3 must serve the documents required by this order on Mir's counsel by **August 8, 2016**.

SO ORDERED.

DATED: July 22, 2016

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE