IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER MIR, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-cv-02766-B |
| | § | |
| L-3 COMMUNICATIONS | § | JURY TRIAL DEMANDED |
| INTEGRATED SYSTEMS L.P., | § | |
|     Defendant. | § | |

### PLAINTIFF PETER MIR'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL SIGNED RELEASES AND BRIEF IN SUPPORT THEREOF

Plaintiff Peter Mir now responds to the Motion to Compel Signed Releases and Brief in Support Thereof filed by Defendant, L-3 Communications Integrated Systems, L.P. In support, Mir states as follows.

#### ISSUES PRESENTED

Rule 34 permits a party to request the production of existing items in the responding party's possession, custody, or control. Defendant's Second Request for Production ordered Mir to complete, execute, and return releases authorizing L-3 to access information relating to his application for and receipt of social security benefits. Mir objected that the requests exceeded Rule 34's permissible scope by demanding the creation of documents that do not already exist. L-3 moved to compel, arguing that Rule 34 is a proper vehicle for obtaining signed releases. L-3's argument is inconsistent with Rule 34's plain language, which only contemplates the production of existing documents in the responding party's custody or control, and is at odds with the majority of case law addressing the issue. Should the Court sustain Mir's objection and deny L-3's motion to compel?

Rule 26 provides that a party may obtain discovery regarding any nonprivileged matter that is relevant and proportional to the needs of the case, considering, e.g., the importance of the issues at stake and the importance of the discovery in resolving the issues. L-3's proposed releases seek information regarding Mir's application for social security benefits in 2006 and his subsequent receipt of those benefits. Mir objected because the releases are overbroad and seek information that is not relevant to Mir's claim that L-3 discriminated against him in 2011, or to L-3's claim that Mir is estopped from asserting his disability discrimination claim. Should the Court sustain Mir's objections and deny L-3's motion to compel.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Peter Mir, an engineer, has spent years working in the aerospace/defense and telecommunications industries. Docket Entry No. 1 ("Complaint"), ¶ 7. Unfortunately, Mir has suffered from hip problems throughout his life. *Id.* at ¶ 9. Over the past forty years, he has had numerous surgeries on his right hip, including multiple hip replacement operations or revisions. *Id.* His last total hip replacement surgery occurred in 2005, during which the sciatic nerve on one side was crushed. *Id.* at ¶¶ 10–11. This caused permanent nerve damage and gait abnormalities, and since then he has walked with a pronounced limp and uses a cane for assistance. *Id.* at ¶¶ 11–12

Due to the nerve damage and accompanying symptoms, Mir had to stop working and go on long term disability in 2005. Complaint, ¶ 13. He applied for Social Security benefits in April 2006. *See* Docket Entry No. 26-4 (Defendant's Exhibits D and E), Def. App.000044-000061. He suffered further complications in the summer of 2007 (requiring yet another surgery), but was ready to return to work in 2008. Because the American economy was in freefall at this time, however, Mir (like so many others) was unable to find a job. Complaint, ¶¶ 14–15.

In 2011, Mir applied for a Mechanical Design Engineer job at L-3's Greenville, Texas facility. Complaint, ¶ 17. L-3 invited him for an interview, which occurred on October 17, 2011. *Id.* at ¶ 19. Mir was met at the recruiter's office by Chad Grant, the hiring manager. *Id.* at ¶¶ 21–22. Grant took Mir to a separate building where his office was located. *Id.* at ¶ 23.

While they were walking to Grant's office, Grant asked Mir what had happened to his leg. Hoping that this was merely a politely curious question (given his limp and cane), Mir responded that he had a hip replacement surgery, a mistake had been made, and his sciatic nerve was crushed. Complaint, ¶ 24. They reached Grant's office and the interview proceeded. Complaint, ¶ 26–31.

At one point, after looking intently at Mir's resume, Grant observed that Mir had "done more things than most of the people that I have brought in here." *Id.* at ¶ 31. Mir thought that sounded promising. *Id.*

But Grant then began quizzing Mir about the nature and extent of his physical limitations. Complaint, ¶ 32. He wanted to know what had happened to Mir's sciatic nerve; what his short- and long-term prognoses were; a time line of when the injury occurred; and when Mir thought his hip would get better. *Id.* After asking why Mir had left his various previous employers, Grant wondered aloud whether Mir felt "unlucky" that all these things had happened to him. *Id.* at ¶¶ 33–34.

L-3 did not award the job to Mir. So, Mir filed a complaint with the Office of Federal Contract Compliance Programs ("OFCCP") on August 11, 2012, and this lawsuit followed.

During the course of discovery, L-3 served Mir with its Second Request for Production, demanding that Mir "complete, execute, and return" a "Consent for Release of Information" for the Social Security Administration (the "SSA Release") and an "Authorization for Release of Information" for Allsup, Inc., a company that assisted Mir with his application for Social Security benefits in 2006 (the "Allsup Release"). *See* Docket Entry No. 26-1 (Defendant's Exhibit A), Def. App.000001-000006. The SSA Release would authorize L-3 to access documents and information relating to (i) Mir's current monthly Social Security benefit amount; (ii) Mir's benefit or payment amounts from May 2005 to present; (iii) Mir's complete medical records from his claims folder(s); (iv) Mir's application(s) for disability benefits; and (v) decisions related to Mir's disability benefits. *See id.* at Def. App. 000005. The Allsup Release would give L-3 to access "all information pertaining to [Mir's] claim for Social Security benefits . . . including relevant medical information." *See id.* at Def. App. 000006.

Mir objected to L-3's Second Request for Production on the ground that the requests exceed the scope of Rule 34 of the Federal Rules of Civil Procedure because they do not seek the production of documents that are presently within Mir's possession, custody, or control, but instead purport to require Mir to create documents that do not already exist. *See* Docket Entry No. 26-1 (Defendant's Exhibit B), Def. App. 000007-000010. Mir also objected because the proposed releases are overbroad and seek information that is not relevant to the claims and defenses at issue in this lawsuit. *Id.*

L-3 has moved to compel, arguing that Rule 34 is a proper vehicle for obtaining signed releases, and that the requested releases "concern claims at issue in this case." *See* Docket Entry No. 26, pp.4–7. As explained below, L-3's motion to compel should be denied.

### ARGUMENT AND AUTHORITIES

**A.     Rule 34 Cannot Be Used to Compel Mir to Sign the Releases**

"The purpose of Rule 34 is to make relevant and nonprivileged documents and objects in the possession of one party available to the other." *EEOC v. Thorman & Wright Corp.*, 243 F.R.D. 426, 428–29 (D. Kan. 2007) (quoting 8A C. Wright & A. Miller, Federal Practice and Procedure § 2202, at 356 (2d ed. 1994)). The scope of Rule 34 extends only to requests for documents, electronically stored information, and other tangible things in the responding party's possession, custody, or control, and to permit entry upon designated land or other property. FED. R. CIV. P. 34(a).

Contrary to L-3's contentions, there is no basis in Rule 34 to compel a party to sign a release. *See, e.g., EEOC v. Randall Ford, Inc.*, 298 F.R.D. 573, 575 (W.D. Ark. 2014) ("[T]he court generally has no authority to compel a party to execute a release directing a non-party to produce documents."); *Fields v. W. Virginia State Police*, 264 F.R.D. 260, 263 (S.D. W. Va. 2010)

(finding that court did not have authority to compel plaintiff to sign medical releases); *Mills v. E. Gulf Coal Preparation Co., LLC*, 259 F.R.D. 118, 133 (S.D. W. Va. 2009) (Rule 34 "does not contain any requirement that a party provide written authorization for the release of documents in the possession, custody or control of another person, entity or agency or permit the Court to order a party to provide such authorization."); *Klugel v. Clough*, 252 F.R.D. 53, 54–55 (D.D.C. 2008) ("Defendants offer no authority for the proposition that a party may extract from an opposing party a signed authorization for the release of medical records by attaching an unsigned release to a request for production . . . **The strained interpretation of Rule 34 which Defendants urge is inconsistent with the plain language of the rule**.") (emphasis added); *Thorman*, 243 F.R.D. at 428 ("The Court [] finds no basis within Fed. R. Civ. P. 34 to compel a party signature."); *Clark v. Vega Wholesale Inc.*, 181 F.R.D. 470, 471 (D. Nev. 1998) ("[T]he issue is whether Rule 34 allows the Court to compel the signing of a release form to obtain the medical records . . . however, the Court finds no basis in Rule 34 for it under these circumstances.").[1]

Rather, "[t]he appropriate procedure to compel a non-party to produce documents is to serve them a subpoena as set forth in Rule 45 of the Federal Rules of Civil Procedure." *Thorman*, 243 F.R.D. at 429; *see also Cheshire*, 2015 WL 7736649 at *4 ("If the requested information is not within the Plaintiff's possession, custody or control,[2] then the employment records should be

---

[1] There is no binding Fifth Circuit precedent deciding whether a party can be compelled to sign a blank authorization form for medical or other records. *See U.S. EEOC v. Resources for Human Development, Inc.*, 2011 WL 3841066, *2 (E.D. La. Aug. 31, 2011). Although there appears to be a split among the district courts regarding the scope of Rule 34 in this respect, one court has recently noted that "a majority of courts have held that Rule 34 itself does not give courts the power to order a party to sign a release." *Cheshire v. Air Methods Corp.*, 2015 WL 7736649, *4 (W.D. La. Nov. 30, 2015) (citing cases).

[2] The documents L-3 seeks from the Social Security Administration and Allsup are clearly not within Mir's possession or custody, nor are they within his control. "A party that has a legal right to obtain certain documents is deemed to have control of the documents," but "[t]he relationship between the party and the person or entity having actual possession of the documents is central in each case." *Thorman*, 243 F.R.D. at 429 (internal citations and quotations omitted). Here, L-3 has neither argued nor shown that Mir has "control" over documents belonging to the Social Security Administration or Allsup. *Monroe's Estate v. Bottle Rock Power Corp.*, 2004 WL 737463, *10 (E.D. La. April 2, 2004) ("The burden is on the party seeking discovery to make a showing that the other party has control

subpoenaed directly from the non-party custodian."). In fact, courts have held that "[i]t is only after the individuals or entities object on grounds of privilege or otherwise fail to produce the documents pursuant to subpoena that the Court will consider a motion requesting (1) the Court compel the entity to produce the documents pursuant to Rule 45; or (2) compel the party to execute appropriate releases pursuant to the Court's general powers to enforce its own orders." *Thorman*, 243 F.R.D. at 429; *DirectTV, Inc. v. Hess*, 2005 WL 375668, *1 (D. Kan. Feb. 9, 2005) (same). Therefore, at a minimum, L-3 should be required to serve subpoenas on the Social Security Administration and Allsup before asking the Court to compel Mir to sign the releases.

The cases cited by L-3 for the proposition that Rule 34 is a proper vehicle for compelling a party to sign a blank authorization form are inapposite. Although this Court compelled the plaintiffs in *Jackson v. Stevens Transport, Inc.*, 2015 WL 11019131, *2 (N.D. Tex. June 17, 2015), and *Clewis v. Medco Health Solutions, Inc.*, 2013 WL 5354574, *2 (N.D. Tex. Sept. 25, 2013), to sign releases, the plaintiffs in those cases did not assert objections under Rule 34. Moreover, because the plaintiff in *Clewis* had previously agreed to sign the release at issue, the Court explicitly stated that its authority under Rule 34 was not at issue. *Clewis*, 2013 WL 5354574 at *3 ("In light of the parties' prior agreement [that Plaintiff would sign a limited HIPAA authorization release form], the Court need not invoke the authority of Rule 34 to grant Defendant's Motion to Compel but, instead, holds the parties to their prior agreement."). Similarly, in *Moore v. The Shaw Group, Inc.*, 2015 WL 4936261, *3 (M.D. La. Aug. 18, 2015), the "Plaintiffs ha[d] no objection to producing releases for the discovery of relevant, non-privileged medical and employment records that are properly limited in time and scope." The court then noted that it had "compelled plaintiffs to sign releases, **where no objections had been lodged**, subject to certain limitations

---

over the material sought."). Consequently, L-3 must directly subpoena the documents it seeks from the Social Security Administration and Allsup.

placed on those releases by the court." *Id.* (emphasis added).  In *Matherne v. Schramm*, 2013 WL 5961096, *2–3 (M.D. La. Nov. 7, 2013), the plaintiffs waived all objections to the defendants' requests for production because they never served any, and did not even file a response to the defendants' motion to compel.  Finally, the *pro se* plaintiff in *Wymore v. Nail*, 2016 WL 1452437, *3 (W.D. La. Apr. 13, 2016), did not assert a Rule 34 objection to the Defendant's request that he sign a HIPPA authorization form.  Instead, the plaintiff simply objected on the ground that the defendant already had access to his prison medical records.

The only case L-3 cites where a Rule 34 objection was squarely at issue is a 1997 unpublished opinion from the Eastern District of Louisiana.  *See Allen v. Indian Harbor Marine, Inc.*, 1997 WL 666210 (E.D. La. Oct. 24, 1997).  But in the nearly twenty years that have passed since *Allen*, numerous courts within the Fifth Circuit – including the Eastern District of Louisiana – have rejected the contention that Rule 34 is a proper means to compel a party to sign a release. *See, e.g., Resources of Human Development*, 2011 WL 3841066 at *1 ("[T]he cases cited by plaintiff persuasively support its argument that Fed. R. Civ. P. 34 dos not authorize the use of such a procedure [requiring a party to sign a release attached to a request for production].  These cases hold that Rule 34 does not permit a party, or the court, to compel another party to sign a release and/or that the records sought by the releases are not within the responding party's possession, custody or control."); *see also Cheshire*, 2015 WL 7736649 at *4; *Butler v. Louisiana Dep't of Public Safety and Corrections*, 2013 WL 2407567, *9 (M.D. La. May 29, 2013) ("Rule 34 does not permit a party, or the court, to compel another party to sign a [medical] release.") (internal citations and quotations omitted).

Mir cannot be compelled under Rule 34 to sign the SSA Release and the Allsup Release. If L-3 wants the documents at issue, it needs to subpoena them under Rule 45. L-3's motion to compel should be denied.

**B.     The Releases are Overbroad and Seek Irrelevant Information**

L-3 argues that, based upon its affirmative defense of estoppel, it is entitled to "all information pertaining to [Mir's] claim for Social Security benefits . . . including relevant medical information" from Allsup because Allsup assisted Mir with his application for Social Security benefits in 2006 (and, according to Mir's deposition testimony, may have included some incorrect information when preparing the application). L-3 also argues that it is entitled to all documents and information from the Social Security Administration relating to (i) Mir's current monthly Social Security benefit amount; (ii) Mir's benefit or payment amounts from May 2005 to present; (iii) Mir's complete medical records from his claims folder(s); (iv) Mir's application(s) for disability benefits; and (v) decisions related to Mir's disability benefits. L-3's arguments lacks merit.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Mir's application for Social Security benefits in 2006 and his communications with Allsup in connection with the preparation of his application are not relevant to Mir's claim that L-3 discriminated against him in 2011, nor is such information relevant to L-3's affirmative defense of estoppel. As noted in L-3's motion to compel, a plaintiff may be estopped from arguing

he is a qualified individual "in those cases . . . where the plaintiff's factual descriptions supporting disability preclude the possibility of qualification **as of a certain date**."  *McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 466 (5th Cir. 2005) (emphasis added) (finding that plaintiff's representation to the Social Security Administration that he was disabled and unable to perform his job "as of June 6, 2000" estopped him from subsequently claiming he was qualified for a position that was denied to him on June 8, 2000 – two days later).  Nothing in Mir's 2006 application for Social Security benefits even remotely precludes the possibility that he would be able to work in October 2011 – more than five years later.  *See* Docket Entry No. 26-4 (Defendant's Exhibits D and E), Def. App.000044-000061.[3]  Notably, Mir has already produced a Social Security Administration Disability Update Report for the time frame of June 2011 to June 7, 2013 (which covers the time period when Mir interviewed with L-3 in October 2011), in which Mir discloses to the Social Security Administration that he has been looking for work for two and a half years.  *See* Docket Entry No. 26-6 (Defendant's Exhibit G) at Def. App. 000072.

Accordingly, the broad categories of information that L-3 seeks by virtue of its proposed releases – "all information pertaining to [Mir's] claim for Social Security benefits . . . including relevant medical information" from Allsup as well as all documents and information from the Social Security Administration relating to (i) Mir's current monthly Social Security benefit amount; (ii) Mir's benefit or payment amounts from May 2005 to present; (iii) Mir's complete medical records from his claims folder(s); (iv) Mir's application(s) for disability benefits; and (v) decisions related to Mir's disability benefits – are neither relevant nor proportional to the needs

---

[3]Importantly, "[b]eing 'disabled' and 'qualified' are not antithetical; both may actually be necessary elements of an ADA claim." *Butler*, 2013 WL 2407567 at *5.  As the Supreme Court explained in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 797–98 (1999), a plaintiff who receives Social Security disability benefits is not per se precluded from making a showing for qualification for purposes of making out a prima facie case of disability discrimination.

of the case, particularly when considering the minimal importance of the requested discovery in resolving the actual claims and defenses at issue in this case – i.e., whether L-3 discriminated against Mir, and whether Mir is estopped from asserting his discrimination claim.

## CONCLUSION

Rule 34 does not provide a basis for compelling Mir to execute L-3's proposed releases. Even if it did, L-3's proposed releases are overbroad and seek irrelevant information. L-3's motion to compel should be denied. A proposed Order is attached.

Respectfully submitted,

DOW GOLUB REMELS & BEVERLY, LLP

By: /s/ Andrew S. Golub
  Andrew S. Golub
  Texas Bar No. 08114950
  asgolub@dowgolub.com
  9 Greenway Plaza, Suite 500
  Houston, Texas  77046
  Telephone: (713) 526-3700
  Facsimile:  (713) 526-3750

  ATTORNEYS FOR PLAINTIFF

OF COUNSEL:

Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
THE SANFORD FIRM
1910 Pacific Ave., Suite 15400
Dallas, Texas  75201
Telephone: 214-717-6653
Facsimile: 214-919-0113

## CERTIFICATE OF SERVICE

The undersigned counsel of record hereby certifies that a true and correct copy of the foregoing document was served on the following individuals via the Court's CM/ECF filing system on August 10, 2016:

Mr. Robert E. Sheeder
BRACEWELL & GIULIANI LLP
1445 Ross Ave., Suite 3800
Dallas, Texas  75202
*Attorney-in-Charge for Defendant*
*L-3 Communications Integrated Systems L.P.*

*/s/ Andrew S. Golub*
Andrew S. Golub