IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER MIR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-2766-B |
| | § | |
| L-3 COMMUNICATIONS | § | |
| INTEGRATED SYSTEMS, L.P., | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Defendant L-3 Communications Integrated Systems, L.P. ("L-3" or "Defendant") has filed a Motion to Compel Signed Releases from Plaintiff Peter Mir ("Mir" or "Plaintiff") [Dkt. No. 26] (the "MTC"), seeking an order under Federal Rule of Civil Procedure 37(a) to require Mir to complete, execute, and return Form SSA-3288 "Consent for the Release of Information" and an "Authorization for Release of Information" from Allsup Inc. as L-3 has requested pursuant to Federal Rule of Civil Procedure 34(a).

United States District Judge Jane J. Boyle referred Defendant's MTC to the undersigned United States magistrate judge for determination pursuant to 28 U.S.C. § 636(b). *See* Dkt. No. 27.

Mir filed a response, *see* Dkt. No. 30, and L-3 filed a reply, *see* Dkt. No. 31.

For the reasons explained below, the Court GRANTS L-3's Motion to Compel Signed Releases [Dkt. No. 26].

-1-

## Background

Mir, an engineer, applied for a position with L-3. After an interview, L-3 did not award the job to Mir, and Mir filed an Administrative Complaint with the OFCCP, alleging violations of Section 503 of the Rehabilitation Act ("Section 503") and the Americans with Disabilities Act ("ADA") based on L-3's status as a federal contractor. The OFCCP has jurisdiction to investigate discrimination complaints leveled against federal contractors.

During the OFCCP's investigation of Mir's complaint, L-3 provided the OFCCP with a position statement as well as several follow up communications. L-3 contends that it provided these documents under the assurance that, in accordance with the OFCCP's regulations and longstanding practice, L-3's documents would remain confidential.

Following its investigation, the OFCCP issued a finding that there was insufficient evidence to conclude that L-3 violated its obligations under Section 503 and the ADA and issued a right-to-sue letter enabling Mir to bring a lawsuit against L-3 under the ADA within 90 days.

Mir then filed this action against L-3, alleging a violation of the ADA.

On April 25, 2016, L-3 deposed Mir. L-3 explains that Mir submitted his Application for Disability Insurance Benefits to the Social Security Administration on April 12, 2006 and has been receiving Social Security disability benefits from 2006 to the present. According to L-3, during his deposition, Mir admitted that he made misrepresentations to the Social Security Administration in connection with the Social

Security benefits that he receives. Specifically, L-3 contends that, in his benefits application, Mir agreed to notify the Social Security Administration if his condition improved and he became able to work; that Mir admitted that statements contained in his application are no longer true because his condition has in fact improved and he is able to work; and that Mir has not updated the Social Security Administration that his condition no longer prevents him from working.

According to L-3, Mir also filled out a questionnaire (the Adult Disability & Work History Report), which was submitted to the Social Security Administration, and Mir admitted that this report also contains information that is incorrect and out-of-date concerning his present condition and that portions of this report were not accurate regarding aspects of his job that he could not perform.

In the MTC, L-3 explains that Mir also stated during his deposition that Allsup Inc. assisted him in making representations to the Social Security Administration, including by preparing the Adult Disability & Work History Report. According to L-3, Mir never informed Allsup Inc. or the Social Security Administration of the inaccuracies in the report, and Mir also testified that he cannot remember whether he talked to Allsup Inc. before submitting his Application for Disability Insurance Benefits to the Social Security Administration on April 12, 2006.

L-3 contends that "Mir's Social Security Disability Insurance Benefits are relevant to claims and defenses in this lawsuit," where "Mir's acceptance of disability benefits, and the statements that Mir made to the Social Security Administration, have a direct bearing on whether he is judicially estopped from bringing his claim for

disability discrimination under the ADA." Dkt. No. 26 at 2.

Following the deposition, L-3 served its Second Request for Production to Plaintiff Peter Mir, requesting in Request Nos. 1 and 2 that Mir complete, execute, and return Form SSA-3288 "Consent for the Release of Information" and an "Authorization for Release of Information" from Allsup Inc. (collectively, the "Releases"). According to Mir, the Form SSA-3288 release would authorize L-3 to access documents and information relating to (i) Mir's current monthly Social Security benefit amount; (ii) Mir's benefit or payment amounts from May 2005 to present; (iii) Mir's complete medical records from his claims folder(s); (iv) Mir's application(s) for disability benefits; and (v) decisions related to Mir's disability benefits, and the release to Allsup Inc. would give L-3 to access "all information pertaining to [Mir's] claim for Social Security benefits ... including relevant medical information." Dkt. No. 26-1 at Def. App. 00005-00006.

Mir objected to these requests and refused to sign and return the Releases. He asserts that the requests exceed the scope of Rule 34, which, according to Mir, only permits L-3 to seek the production of documents that are presently within Mir's possession, custody, or control and does not "require the creation of document that do not presently exist for the purpose of enabling another party to informally obtain the documents outside the boundaries of [Federal Rules of Civil Procedure] 34 and 45." *Id.* at Def. App. 00008-00009. Mir also objected that the requests seek information that is not relevant to the claims and defenses at issue in this lawsuit and that the Releases are overbroad. *See id.*

-4-

L-3 now moves to compel Mir to sign the Releases "[b]ased on the relevance of these Releases to claims and defenses in this lawsuit, as well as clear precedent allowing for L-3 to obtain signatures under Rule 34." Dkt. No. 26 at 2.

Mir responds that "L-3's argument is inconsistent with Rule 34's plain language, which only contemplates the production of existing documents in the responding party's custody or control, and is at odds with the majority of case law addressing the issue." Dkt. No. 30 at 1. Mir also contends that "L-3's proposed releases seek information regarding Mir's application for social security benefits in 2006 and his subsequent receipt of those benefits" and that the Releases therefore "are overbroad and seek information that is not relevant to Mir's claim that L-3 discriminated against him in 2011, or to L-3's claim that Mir is estopped from asserting his disability discrimination claim." *Id.*

Mir urges the Court to sustain his objections and deny L-3's MTC because Rule 34 does not provide a basis for compelling Mir to execute L-3's proposed Releases and because, even if it did, the Releases are overbroad and seek irrelevant information.

## Legal Standards

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34. *See* FED. R. CIV. P. 37(a)(3)(B)(iv).

The party resisting discovery must show specifically how each discovery request

is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). In response to a Rule 34 request, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C). A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").

A party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of its objection to a request, and, if it does not, it waives the objection. *See Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 (D. Kan. 2004); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

Federal Rules of Civil Procedure Rules 26(b) and 26(c) and 34 have been amended, effective December 1, 2015. Rule 26(b)(1) now provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may

obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The amendments to Rules 26 and 34 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending. The Court finds that applying the standards of Rules 26 and 34, as amended, to Defendant's MTC is both just and practicable.

Further, for the reasons the Court has previously explained, the Court concludes that the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See Carr v. State Farm Mutual Automobile Insurance Company*, 312 F.R.D. 459, 463-69 (N.D. Tex. 2015). Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion.

*See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). Thus, as amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The party seeking discovery, to prevail on a motion to compel, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing.

And the party seeking discovery is required to comply with Rule 26(b)(1)'s

proportionality limits on discovery requests; is subject to Rule 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3); *see generally Heller v. City of Dallas*, 303 F.R.D. 466, 475-77, 493-95 (N.D. Tex. 2014).

But the amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to – in order to successfully resist a motion to compel – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or that a discovery request would impose an undue burden or expense or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303 F.R.D. at 483-93.

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the

movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (I) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A).

Federal Rule of Civil Procedure 37(a)(5)(B)-(C) further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C).

## Analysis

I.    <u>Rule 34 is a proper vehicle for obtaining signed releases.</u>

L-3 contends that, "[w]hile there has been some disagreement among courts over whether Rule 34 can be used to require a party to sign a document, the overwhelming majority of courts in the Fifth Circuit have found Rule 34 is a proper mechanism for obtaining signatures" and that "this is particularly the case when the release relates

to facts and claims the party has put at issue in a lawsuit." Dkt. No. 26 at 4. Mir responds that he "cannot be compelled under Rule 34 to sign the [Releases]" and that, "[i]f L-3 wants the documents at issue, it needs to subpoena them under Rule 45." Dkt. No. 30 at 8.

Rule 34(a) provides that "[a] party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things; or (2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." FED. R. CIV. P. 34(a).

As a general matter, a party cannot invoke Rule 34(a) to require another party to create or prepare a new or previously non-existent document solely for its production. *See, e.g.*, *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *14 (D. Colo. Feb. 8, 2010) (collecting cases); *accord Marchese v. Sec'y, Dep't of the Interior*, Civ. A. No. 03-3082, 2004 WL 2297465, at *4 (E.D. La. Oct. 12, 2004) ("Rule 34 does not require a party responding to discovery to

create responsive materials, only to produce those in its possession, custody or control." (emphasis removed)). Similarly, " Rule 45 'does not contemplate that a non-party will be forced to create documents that do not exist.'" *Georgacarakos v. Wiley*, No. 07-CV-01712-MSK-MEH, 2009 WL 924434, at *2 (D. Colo. Apr. 3, 2009) (quoting *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 168 F.R.D. 630, 633 (N.D. Ill.1996)).

L-3 does not ask Mir to create or prepare a new document but rather to sign a two authorization forms for release of records. The United States Court of Appeals for the Fifth Circuit has specifically held that a party is not required by a Federal Rule of Civil Procedure 33 interrogatory to sign an authorization form appended to interrogatories. *See McKnight v. Blanchard*, 667 F.2d 477, 481-82 (5th Cir. 1982). But, where defendants sought to have a plaintiff sign "a form ... that would authorize the release to the defendants of all of his medical records," the Fifth Circuit panel in *McKnight* also suggested that Federal Rule of Civil Procedure 34 may be an appropriate mechanism by which to require a party to sign an authorization release. *Id.* In that decision, the Court of Appeals noted that, "although the documents or authority to copy them could have been obtained by a request under Rule 34, and while quite possibly (since [the plaintiff's] physical condition was put at issue by his demands) the court upon proper motion could have ordered him to sign such an authorization, in default thereof staying further proceedings –, [the plaintiff] was not obliged by reason of the requests served upon him, which were based (solely) upon Rule 33 and [Federal Rule of Civil Procedure] 36, to sign the authorization incorrectly appended to the interrogatories as a 'request for admission.'" *Id.* at 482.

But one court in this circuit recently explained that its "research has located no Fifth Circuit case that has *decided* whether a party can be compelled to sign a blank authorization form for medical or other records." *U.S. E.E.O.C. v. Res. for Human Dev., Inc.*, Civ. A. No. 10-3322, 2011 WL 3841066, at *2 (E.D. La. Aug. 31, 2011) (emphasis in original). And, in the 34 years since the *McKnight* decision, district court decisions in this circuit and elsewhere have split as to the issue of whether Rule 34 is a proper vehicle by which a party may be required to sign an authorization for the release of medical, employment, Social Security, or other records, even if those records are relevant to the claims or defenses at issue. *See, e.g.*, *Robinson v. Jackson State Univ.*, No. 3:13-CV-7-HTW-LRA, 2014 WL 11514968, at *2 (S.D. Miss. July 31, 2014) (collecting cases); *Clewis v. Medco Health Sols., Inc.*, No. 3:12-cv-5208-L, 2013 WL 5354574, at *2 (N.D. Tex. Sept. 25, 2013) (collecting cases); *see also Cheshire v. Air Methods Corp*, No. 3:15CV933, 2015 WL 7736649, at *4 (W.D. La. Nov. 30, 2015) ("The Federal Rules of Civil Procedure do not prevent a party from willingly executing a release authorizing a nonparty custodian to produce confidential employment records directly to another party. Some courts allow a party to use a Rule 34 request to force the responding party to provide a release enabling the requesting party to get the records directly from the nonparty custodian. However, a majority of courts have held that Rule 34 itself does not give courts the power to order a party to sign a release." (citations omitted)).

In one camp (on which Mir relies), courts have concluded that Rule 34(a) does not give courts the power to order a party to sign an authorization or release because

(1) Rule 34(a) does not authorize requiring a party to create a document or sign a form attached to a request for production and (2) because, if the other party is not in possession or custody of the records at issue, the party should first serve a Rule 45 subpoena on the non-party custodian or "request the documents from the party, which then has a duty to collect them from the nonparty custodian to the extent the requested information is within the party's possession, custody, or control." *Cheshire*, 2015 WL 7736649, at *4.[1] These courts have held that "Rule 34 is [not] a vehicle by which a party may be compelled to sign an authorization for the release of records – even where such records have been determined to be relevant –" and that a "strained interpretation of Rule 34 [by which parties urge a contrary conclusion] is inconsistent with the plain language of the rule." *Klugel v. Clough*, 252 F.R.D. 53, 55 (D.D.C. 2008) ("hold[ing] that a request for production of documents pursuant to Rule 34 of the Federal Rules of Civil Procedure cannot be utilized as a vehicle by which to compel a party to sign an authorization for the release of medical records").

---

[1] *See also, e.g., E.E.O.C. v. Thorman & Wright Corp.*, 243 F.R.D. 426, 429 (D. Kan. 2007) ("Apparently, Defendant has not yet attempted to secure copies of the requested documents from the non-party custodian of the records via subpoena. The appropriate procedure to compel a non-party to produce documents is to serve them a subpoena as set forth in Rule 45 of the Federal Rules of Civil Procedure. It is only after the individuals or entities object on grounds of privilege or otherwise fail to produce the documents pursuant to subpoena that the Court will consider a motion requesting (1) the Court compel the entity to produce the documents pursuant to Rule 45; or (2) compel the party to execute appropriate releases pursuant to the Court's general powers to enforce its own orders." (footnote omitted)); *Becker v. Securitas Sec. Servs. USA, Inc.*, No. 06-2226-KHV-DJW, 2007 WL 677711, at *3 (D. Kan. Mar. 2, 2007) ("Rule 34 contains no provision requiring a party to sign a release or authorization so that the requesting party may obtain a document directly from a non-party." (footnote omitted)).

Courts have also denied motions to compel requests under Rule 34(a) for signed releases or authorization forms based on a finding that the responding party was not in possession, custody, or control of the requested records. *See, e.g.*, *Clark v. Vega Wholesale Inc.*, 181 F.R.D. 470, 472 (D. Nev. 1998) ("acknowledg[ing] that some courts have ordered a party to sign a medical release, but [explaining that] these courts rely on the conclusion that a compelled medical release is the most expeditious, efficient, or least expensive means of procuring information from medical providers" but concluding, where "it is uncontroverted that medical records are documents or tangible items as defined under Rule 34(a) and that the Plaintiff does not have actual possession or custody of the medical records," and where "medical care providers maintain custody or control of medical records" and "[t]he relationship between the Plaintiff and her doctor is not sufficient to establish control," that "the Defendants can secure copies of the requested documents from the custodian of the records as readily as the Plaintiff," that "the Defendants have complete access to all necessary information through the appropriate discovery provisions of the Federal Rules of Civil Procedure," and that there is "no basis in Rule 34 for [compelling the signing of a release form to obtain the medical records] under these circumstances").

In the other camp (to which L-3 looks for support), courts follow a line of cases that "'hold, explicitly or implicitly, that Rule 34, along with Rule 37, empowers federal courts to compel parties to sign written authorizations consenting to the production of various documents.'" *Wymore v. Nail*, No. 5:14-CV-3493, 2016 WL 1452437, at *3 (W.D. La. Apr. 13, 2016) (quoting *Lischka v. Tidewater Servs, Inc.*, Civ. A. No. 96-296, 1997

WL 27066, at *2 (E.D. La. Jan. 22, 1997)). Courts have explained that Rule 34(a) "allows for production of documents which are in the possession, custody, or control of the party upon whom the request is served" and "that, for purposes of Rule 34, plaintiffs are in control of records that can be released via an authorization, because, by either granting or withholding [their] consent, [they] may determine who shall have access to them." *Lischka*, 1997 WL 27066, at *2 (internal quotation marks omitted). These courts have concluded that "written authorizations may be compelled under Rule 34 because they simply compel parties to disclose documents which are under their control." *Id.* at *3; *see also Gondola v. USMD PPM, LLC*, No. 3:15-cv-411-M, 2016 WL 3031852, at *6 (N.D. Tex. May 27, 2016) ("Plaintiffs report in their response to the MTC that they have already produced some documents but will also provide an authorization for unemployment records on or before Friday, April 20, 2016. At oral argument, Plaintiffs' counsel reported that Henshaw has since declined to sign the Unemployment Authorization. The Court determines that requiring this authorization is appropriate under Rule 34 and proportional to the needs of the case.").

As to Rule 34's not requiring a responding party to create new or nonexistent documents, courts have concluded that "[i]t simply does not follow that if Rule 34 permits courts to compel parties to sign written authorizations, it must also permit parties to compel their adversaries to create documents (or objects) of their choosing," where "[s]igning an authorization is an act that can be construed as production of a document under a party's control." *Lischka*, 1997 WL 27066, at *2 (emphasis removed).

Another court in this camp rejected the argument "regarding the availability of

the requested documents pursuant to FRCP Rule 45 subpoena" because "any attorney who has ever handled even one case implicating records and documents in the physical possession of non-parties and particularly government entities, including medical records, military records, social security disability records, tax records, and the like, will not be released without the written authorization of the individual to whom such records pertain." *Allen v. Indian Harbor Marine, Inc.*, Civ. A. 96-3135, 1997 WL 666210, at *2 (E.D. La. Oct. 24, 1997).

When interpreting the Federal Rules of Civil Procedure, the Court is to give the rules their plain meaning, and, as with a statute, the inquiry is complete if the Court finds find the text of the rules to be clear and unambiguous. *See Yesh Music v. Lakewood Church*, 727 F.3d 356, 359 (5th Cir. 2013). The Court may also give weight to, and consider as persuasive authority, the construction of a rule offered by the Advisory Committee in its notes. *See, e.g.*, *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986). And, when interpreting a Federal Rule of Civil Procedure, the United States Supreme Court has also considered the rule's structure and context as well as its purpose and whether an interpretation is the rule's "most natural reading" as well as "an eminently sensible one." *Bus. Guides, Inc. v. Chromatic Comm'ns Enters., Inc.*, 498 U.S. 533, 540-46 (1991).

Within this interpretive framework, the Court is persuaded to fall in with this second camp of courts that conclude that Rule 34, along with Rule 37, empowers courts to compel parties to sign written releases or authorization forms consenting to the production of various documents.

The Court agrees with other courts' observations that a party can seek documents such as Social Security or health records directly from a non-party custodian through a Rule 45(a) subpoena – in response to which the non-party may or may not refuse to release records without the written authorization of the individual to whom such records pertain – and that a party can, using Rule 34(a), request the records directly from the other party and thereby require that party to collect them from non-party custodians to the extent that the requested information is within the responding party's possession, custody, or control.

But those options' availability does not foreclose a party's using Rule 34(a) to seek a signed authorization or release from another party to facilitate disclosure by a non-party custodian of documents that are under the responding party's control but not within that party's possession or custody.

That is because requests for signing and executing written releases or authorizations may be properly made under Rule 34(a) – and then, if necessary, compelled under Rule 37(a) – insofar as they require a responding party to permit the requesting party or its representative to inspect or copy designated documents or electronically stored information in the responding party's control. *See* FED. R. CIV. P. 34(a)(1). Reading Rule 34(a) to permissibly require parties to sign and execute written releases and authorization forms, so understood, does not amount to impermissibly requiring a responding party to create a new or non-existent document.

The Court concludes that this is the correct reading of Rule 34(a), consistent with the Fifth Circuit's observation in *McKnight* that "the documents or authority to

copy them could have been obtained by a request under Rule 34, and while quite possibly (since [the plaintiff's] physical condition was put at issue by his demands) the court upon proper motion could have ordered him to sign such an authorization," 667 F.2d at 482, and with Federal Rule of Civil Procedure 1's directive that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding," FED. R. CIV. P. 1.

Of course, any discovery requests under Rule 34(a) are "still subject to the scope and limitations of Rule 26(b)." *Colsan v. Cincinnati Ins. Co.*, Civ. A. No. 13-495-BAJ-RLB, 2013 WL 6531917, at *3 (M.D. La. Dec. 12, 2013); *accord* FED. R. CIV. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the [so-called proportionality factors]. Information within this scope of discovery need not be admissible in evidence to be discoverable."); FED. R. CIV. P. 34(a) (providing that "[a] party may serve on any other party a request within the scope of Rule 26(b)"); *Matherne v. Schramm*, Civ. A. No. 12-807-JJB-RLB, 2013 WL 5961096, at *3 (M.D. La. Nov. 7, 2013) ("This Court has previously declined to compel a party, over their objection, to sign an authorization to release confidential medical information when the material covered by such a waiver was irrelevant and privileged and thus outside of the scope of discovery.").

And, on this reading of Rule 34(a), the responding party must actually have

"control," for Rule 34(a)'s purposes, over the records sought through the releases or authorizations at issue. "Rule 34 is broadly construed and documents within a party's control are subject to discovery, even if owned by a nonparty." *S. Filter Media, LLC v. Halter*, Civ. A. No. 13-116-JJB-RLB, 2014 WL 4278788, at *5 (M.D. La. Aug. 29, 2014) (internal quotation marks omitted). "Rule 34's definition of 'possession, custody, or control,' includes more than actual possession or control of the materials; it also contemplates a party's legal right or practical ability to obtain the materials from a nonparty to the action." *Edwards v. City of Bossier City*, No. CV 15-1822, 2016 WL 3951216, at *3 (W.D. La. July 20, 2016) (internal quotation marks omitted).[2]

---

[2] *See also Benson v. Rosenthal*, No. CV 15-782, 2016 WL 1046126, at *4 (E.D. La. Mar. 16, 2016) ("The concept of 'control' ... is often highly fact-specific, [but certainly includes when] the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy. Factors to consider in determining whether a party has 'control' of materials include whether the litigant ... could secure materials from [a] nonparty corporation to meet its own business needs, and whether, by virtue of stock ownership or otherwise, one ... effectively controls the other. [U]nder some circumstances courts interpret the control concept to go beyond whether the litigant has a legal right to obtain materials and focus on practical ability to obtain them.... [I]f Benson has the legal right or practical ability to obtain 'League documents' responsive to these requests that are not in the actual possession or custody of Benson or the entities that he controls, they are within his control, and he must produce them." (internal quotation marks and citations omitted; emphasis removed)); *Savoy v. Davis*, No. CV 14-700-JJB-EWD, 2016 WL 589696, at *1 (M.D. La. Feb. 11, 2016) ("Although this production obligation may extend to materials that a party has a legal right to obtain, even though it has no copy, and to materials in the possession of employees or related entities, there is no obligation to manufacture documents or other materials in response to a Rule 34 request or to produce materials that are not in the responding party's possession, custody or control." (citation omitted; emphasis removed)); *Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-CV-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011) ("'Control' does not require that a party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control for discovery purposes when that party has the right, authority, or practical ability to obtain the documents from a nonparty to the

"The burden, however, is on the party seeking discovery to make a showing that the other party has control over the documents sought." *S. Filter*, 2014 WL 4278788, at *5; *accord Shell Glob.*, 2011 WL 3418396, at *2 ("The party seeking production of documents bears the burden of establishing the opposing party's control over those documents."); *Goh v. Baldor Elec. Co.*, No. 3:98-mc-64-T, 1999 WL 20943, at *2 (N.D. Tex. Jan. 13, 1999) (same).

Mir contends that "[t]he documents L-3 seeks from the Social Security Administration and Allsup are clearly not within Mir's possession or custody, nor are they within his control," and that "L-3 has neither argued nor shown that Mir has 'control' over documents belonging to the Social Security Administration or Allsup." Dkt. No. 30 at 5 n.2. Mir asserts that "L-3 must directly subpoena the documents it seeks from the Social Security Administration and Allsup" "before asking the Court to compel Mir to sign the releases." *Id.* at 6 & n.2.

The Court disagrees and finds that L-3 has shown that, under the circumstances here, the documents sought through the Releases are within Mir's control where, insofar as the records can be released – and perhaps can only be released – via an executed authorization or release, Mir, by either granting or withholding his consent,

suit." (internal quotation marks omitted)); *In re Wells*, 426 B.R. 579, 610 (Bankr. N.D. Tex. 2006) ("In construing the phrase 'possession, custody or control' in [the context of] a request for documents under Federal Rule of Civil Procedure 34, federal courts have universally held that documents are deemed to be within the possession, custody or control of a party for purposes of Rule 34 if the party has actual possession, custody or control of the materials or has the legal right to obtain the documents on demand." (internal quotation marks omitted)).

can determine who may have access to them. On the facts before the Court, the Court finds that Mir has either a legal right or at least a practical ability to obtain the records at issue, as L-3 asserts that he does.

The Court overrules Mir's objections that Rule 34(a) does not authorize L-3's requests that he complete, execute, and return the Releases and turns now to Mir's objections based on the scope of and limitations on discovery under Rule 26(b).

II.    The Releases seek relevant information and are not overbroad.

L-3 asserts that the documents that it seeks with the Releases are clearly relevant to this lawsuit where L-3 asserts an affirmative defense that Mir is estopped from bringing his claim in this case because of his Social Security disability benefits claims.

Mir responds that the Releases seek information regarding Mir's application for social security benefits in 2006 and his subsequent receipt of those benefits and that the Releases are overbroad and seek information that is not relevant to Mir's claim that L-3 discriminated against him in 2011 or to L-3's claim that Mir is estopped from asserting his disability discrimination claim. Mir contends that his application for Social Security benefits in 2006 and his communications with Allsup in connection with the preparation of his application are not relevant to Mir's claim that L-3 discriminated against him in 2011 or to L-3's affirmative defense of estoppel. Mir argues that nothing in his 2006 application even remotely precludes the possibility that he would be able to work in October 2011 – more than five years later. Mir also explains that he has already produced a Social Security Administration Disability Update Report for the

time frame of June 2011 to June 7, 2013 (which covers the time period when Mir interviewed with L-3 in October 2011), in which he discloses to the Social Security Administration that he has been looking for work for two-and-a-half years.

Mir contends that "the broad categories of information that L-3 seeks by virtue of its proposed releases – 'all information pertaining to [Mir's] claim for Social Security benefits ... including relevant medical information' from Allsup as well as all documents and information from the Social Security Administration relating to (i) Mir's current monthly Social Security benefit amount; (ii) Mir's benefit or payment amounts from May 2005 to present; (iii) Mir's complete medical records from his claims folder(s); (iv) Mir's application(s) for disability benefits; and (v) decisions related to Mir's disability benefits – are neither relevant nor proportional to the needs of the case, particularly when considering the minimal importance of the requested discovery in resolving the actual claims and defenses at issue in this case – i.e., whether L-3 discriminated against Mir, and whether Mir is estopped from asserting his discrimination claim." Dkt. No. 30 at 8-9.

L-3 replies that Mir waived his relevance and overbreadth objections because he is, for the first time in his response, providing reasons why the disputed requests are irrelevant and overbroad and because his "form" or boilerplate objections failed to comply with the Federal Rules of Civil Procedure.

L-3 also explains that the report that Mir produced "was signed by Mir in August 2013, two years after his October 2011 interview with L-3," and that "[o]ne question on the Report specifically asked Mir 'which best describes your health now as

compared to June, 2011' and Mir checked the box indicating his condition was the 'same' as in June 2011." Dkt. No. 31 at 7. According to L-3, "[i]t would appear that Mir submitted a prior update report in June 2011 well before filling out this 2013 update report," and "L-3 simply seeks Releases to obtain this type of relevant information." *Id.* L-3 further asserts that "Mir's original 2006 Benefits Application requires him to update the Social Security Administration if his condition changes"; "[h]is 2013 Update Report references back to 2011"; and, "[c]onsequently, documents from 2006 to the present are relevant because Mir may have very well made representations at any point (before or after 2011) to the Social Security Administration about his condition at the time of his interview with L-3 in 2011." *Id.* L-3 argues that "[n]owhere in his Response does Plaintiff represent that he produced all relevant documents related to L-3's estoppel defense – clearly, Plaintiff has not." *Id.*

Finally, L-3 replies that, although Mir "appears to argue that L-3 must demonstrate that Mir's 'factual descriptions of his disability preclude the possibility of qualification as of a certain date' in order for the Releases to be relevant and not overbroad," "[t]his is not the standard for engaging in discovery." *Id.* L-3 contends that it "does not need to conclusively prove its estoppel defense in order to engage in discovery on that defense" and that "L-3 served the disputed Requests on Mir in order to determine if other documents exist demonstrating that Mir precluded himself from qualifying for the L-3 mechanical design engineer position at the time of the 2011 job interview." *Id.* According to L-3, it "seeks Releases specifically limited to documents related to Mir's Social Security Disability Benefits in order to investigate its estoppel

defense." *Id.* at 10.

The possible estoppel effect of a disability benefits determination by the Social Security Administration on an ADA claim involves a fact-specific inquiry. *See Self v. BNSF Ry. Co.*, No. A-14-CA-618-SS, 2016 WL 543245, at *7-*8 (W.D. Tex. Feb. 9, 2016); *McDaniel v. IntegraCare Holdings, Inc.*, 901 F. Supp. 2d 863, 869 (N.D. Tex. 2012). The Court determines that the information that L-3 seeks through the Releases is relevant to its judicial estoppel defense and Mir's disability discrimination claim. The scope of information sought through the Releases is not overbroad in light of the claim and defense at issue. And, under Rule 26(b)(1), the Court determines that this discovery is proportional to the needs of the case, considering the importance of the issue of whether Mir is judicially estopped from bringing his ADA disability discrimination claim and the importance of this information sought through the Releases to resolving that fact-specific issue as well as the parties' relative access to relevant information (including the fact that this information may not be accessible from the non-party custodians without Mir's written authorization). Finally, Mir has not shown that any burden or expense of the proposed discovery – which here involves simply signing the Releases – outweighs its likely benefit.

The Court overrules Mir's objections that the requests seek information that is not relevant to the claims and defenses at issue in this lawsuit and that the Releases are overbroad.

III.   <u>The Court will not award expenses under Rule 37(a)(5).</u>

Under Federal Rules of Civil Procedure 37(a)(5), the Court determines that,

under all of the circumstances presented here, Mir and L-3 should bear their own expenses, including attorneys' fees, in connection with L-3's MTC.

## Conclusion

For the reasons explained above, the Court GRANTS L-3's Motion to Compel Signed Releases [Dkt. No. 26]. Mir must, by **August 29, 2016**, serve on L-3's counsel the signed Form SSA-3288 "Consent for the Release of Information" and "Authorization for Release of Information" from Allsup Inc., as L-3 has requested in Request Nos. 1 and 2 of its Second Request for Production to Plaintiff Peter Mir.

SO ORDERED.

DATED: August 22, 2016

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE