IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER MIR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-2766-L |
| | § | |
| L-3 COMMUNICATIONS | § | |
| INTEGRATED SYSTEMS, L.P., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment (Doc. 40), filed January 9, 2017. After careful consideration of the motion, briefs, appendix, record, and applicable law, the court **grants in part** and **denies in part** Defendant's Motion for Summary Judgment. Specifically, Defendant's Motion for Summary Judgment is **granted** with regard to Plaintiff's discrimination claim under the Americans with Disabilities Act ("ADA") and **denied** with regard to Plaintiff's prohibited inquiries claim under the ADA.

### I. Procedural and Factual Background

Plaintiff Peter Mir ("Plaintiff" or "Mir") filed this action against Defendant L-3 Communications Integrated Systems, L.P. ("Defendant" or "L-3 Communications") on August 24, 2015. Mir contends that L-3 Communications discriminated against him in violation of the ADA when it did not hire him for one of two open positions. He also contends that L-3 Communications made inquiries about the nature and severity of his visible physical limitations in violation of the ADA.

On January 9, 2017, L-3 Communications moved for summary judgment on Mir's claims of ADA discrimination and prohibited inquiries. The court now sets forth the facts in accordance

with the standard in Section II of this opinion. Mir has suffered from hip problems throughout his life and has had a number of surgeries on his right hip, including multiple hip replacement operations or revisions. In 2005, during his last hip replacement, the sciatic nerve on one side of his hip was crushed, which caused permanent nerve damage. As a result, Mir walks with a pronounced limp and uses a cane to assist him while walking. In 2005, the injury ultimately required Mir to go on long-term disability. In 2006, Mir's long-term disability benefits provider required him to apply for social security benefits to offset the long-term disability benefits. On his April 12, 2006 application, Mir indicated that he was unable to work because of a damaged nerve in his right leg and a condition known as "foot drop." Additionally, an Adult Disability & Work Report, prepared by Pamela Ramert, a representative of Allsup, Inc., a company the insurer used to assist people with their social security applications, completed a detailed analysis on Mir's injuries. The Social Security Administration ("SSA") approved Mir's application, and he was awarded SSA benefits.

In 2007, Mir underwent another surgery to correct his hip, and he was physically able to return to work in 2008. In 2011, Mir applied to work for L-3 Communications in its Greenville, Texas facility. He applied to a post on L-3 Communications's website for a Mechanical Design Engineer position (the "Position"). On October 11, 2011, Bill Buckley, a recruiter in L-3 Communications's Human Resources Department, contacted Mir and scheduled his interview for October 17, 2011. The Mechanical Design Engineer job posting listed qualifications for the position as follows:

> Bachelors Degree in Mechanical or Civil Engineering with a minimum of 8 years of experience or Bachelor's Degree with related experience. The candidate must have a knowledge of manufacturing processes, which include machining, NC programming, sheet metal and assembly. Additional knowledge of HDL Aircraft installation procedures is a plus. He/She should have experience with what constitutes a good engineering design with respect to producibility issues. In

**Memorandum Opinion and Order - Page 2**

> additional to these skills, the ability to work simultaneous projects and operate in a dynamic, fast-paced cross-functional environments is required. Strong written and oral communication skills are essential.

Pl.'s App. 143. On October 17, 2011, L-3 Communications interviewed Mir for the position. Chad Grant ("Grant"), a department head at L-3 Communications, met Mir at a recruiter's office and led him to his office, which was located in a separate building to conduct the interview. During the walk to his office, approximately 100 yards away, Grant asked Mir questions regarding his ability to walk. Mir advised Grant that he had a hip replacement surgery, a mistake was made, and his sciatic nerve was crushed.

The interview commenced once Mir and Grant reached his office. Grant advised Mir on responsibilities associated with the Position and asked Mir various questions regarding his background and experience. Grant also asked questions regarding the nature and extent of Mir's physical limitations. Specifically, Grant made inquiries as to Mir's short and long-term prognoses and a timeline of when the injuries occurred. Mir testified that the discussion concerning his injuries lasted approximately fifteen minutes. Approximately three weeks after the interview, Bill Buckley, L-3 Communications's human resources representative, called Mir to inform him that L-3 Communications declined to offer him the Position.

On August 11, 2012, Mir filed a complaint with the Office of Federal Contract Compliance Programs ("OFCCP") because of Grant's inquiries about his injuries during his interview with L-3 Communications. On March 25, 2013, the OFCCP sent Mir a Notification of Results of Investigation, which concluded that L-3 had discriminated against him because of his disability. In May 2015, however, the OFCCP issued a Revised Notification of Results of Investigation, declared that there was insufficient evidence to conclude that L-3 Communications had

discriminated against Mir because of his disability, and issued him a notice of right to sue. Mir initiated this action following the OFCCP's notice of right to sue.

L-3 Communications moves for summary judgment on Mir's claims of ADA discrimination and prohibited inquiries. L-3 communications contends that Mir is unable to establish a *prima facie* case under the ADA because he is not a qualified individual and that it did not discriminate against him because of his disability. Moreover, L-3 Communications contends that even assuming Mir can establish a *prima facie* case, L-3 Communications has set forth a legitimate nondiscriminatory reason for rejecting him for the position, and Mir fails to demonstrate evidence of pretext for discrimination. L-3 Communications further argues that Mir's claim for improper inquiries under the ADA fails because of a lack of evidence of damages proximately caused by the alleged inquiries. Accordingly, L-3 Communications contends that it is entitled to a summary judgment on all of Mir's claims. Plaintiff counters that the summary judgment record, when viewed in the light most favorable to Mir, demonstrates that he has made a *prima facie* case of discrimination, and that L-3 Communications's reason for rejecting him for the position is pretextual. Accordingly, Mir contends that the court should deny L-3 Communications's Motion for Summary Judgment.

## II. Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary

discriminated against Mir because of his disability, and issued him a notice of right to sue. Mir initiated this action following the OFCCP's notice of right to sue.

L-3 Communications moves for summary judgment on Mir's claims of ADA discrimination and prohibited inquiries. L-3 communications contends that Mir is unable to establish a *prima facie* case under the ADA because he is not a qualified individual and that it did not discriminate against him because of his disability. Moreover, L-3 Communications contends that even assuming Mir can establish a *prima facie* case, L-3 Communications has set forth a legitimate nondiscriminatory reason for rejecting him for the position, and Mir fails to demonstrate evidence of pretext for discrimination. L-3 Communications further argues that Mir's claim for improper inquiries under the ADA fails because of a lack of evidence of damages proximately caused by the alleged inquiries. Accordingly, L-3 Communications contends that it is entitled to a summary judgment on all of Mir's claims. Plaintiff counters that the summary judgment record, when viewed in the light most favorable to Mir, demonstrates that he has made a *prima facie* case of discrimination, and that L-3 Communications's reason for rejecting him for the position is pretextual. Accordingly, Mir contends that the court should deny L-3 Communications's Motion for Summary Judgment.

## II.     Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary

judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search

of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

III.   Analysis

   A.   **Disability Discrimination**

   *1. Contentions of the Parties*

L-3 Communications argues that Mir's claim for discrimination under the ADA fails as a matter of law. Specifically, L-3 Communications contends that: (1) Mir cannot establish that he was qualified for the Mechanical Design Engineer position because he is judicially estopped from being a "qualified individual" by his representation to the SSA; (2) because Mir did not meet the minimum qualifications for the Position, he was not "otherwise qualified"; (3) Mir was not subject to an adverse employment decision on account of his disability; (4) Mir was rejected for the position for a legitimate, nondiscriminatory reason; and (5) Mir cannot establish pretext.

Mir contends that he is disabled, as his foot injury qualifies as a disability. Further, Mir argues that he has established a *prima facie* case of discrimination. Specifically, Mir contends that: (1) he was qualified and "otherwise qualified" for the Position; (2) he is not judicially estopped from being a "qualified individual"; (3) fact issues preclude summary judgment

regarding whether L-3 rejected him because of his disabilities; and (4) L-3's reason for rejecting him for the Position is pretextual.

*2. Legal Standard for an ADA Claim*

The ADA is an anti-discrimination statute designed to remove barriers that prevent qualified individuals with disabilities from enjoying employment opportunities available to persons without disabilities. *Taylor v. Principal Fin. Grp., Inc.,* 93 F.3d 155, 161 (5th Cir. 1996). The ADA prohibits discrimination against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training; and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A person is disabled under the ADA if he: (1) has a physical or mental impairment that substantially limits one or more of the major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). The ADA Amendments Act of 2008 made it "easier for people with disabilities to obtain protection under the ADA." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (citing 29 C.F.R. § 1630.1(c)(4)). The amendments broadened the definition of "disability" by "construing the substantially limits standard in favor of broad coverage." *Id* (internal quotation omitted). The bottom line in a "post-amendment case is thus whether [plaintiff's] impairment substantially limits his ability 'to perform a major life activity as compared to most people in the general population." *Id*. (citing 29 C.F.R. § 1630.2(j)(1)(ii)). Neither parties dispute whether Mir is disabled.

A person "may establish a claim of discrimination under the ADA either by presenting direct evidence or by using the indirect method of proof set forth in *McDonnell Douglas* . . . ." *Seaman v. CSPH, Inc.,* 179 F.3d 297, 300 (5th Cir. 1999). There is no direct evidence that Mir

was discriminated against because of his foot injury. Mir testified that Grant asked him, "What is wrong with your leg?" Pl.'s App. 51. Mir responded, "I had a hip replacement and the sciatic nerve was crushed during the hip replacement." *Id*. Mir, however, conceded in his deposition that the question was likely out of curiosity. Pl.'s App. 59:2-59:8. The court agrees that Grant's inquiry about Mir's leg asked under these circumstances is not direct evidence of discrimination under the ADA. Mir, therefore, must "show a violation of the ADA using circumstantial evidence [and] must satisfy the McDonnell Douglas burden-shifting framework." *Cannon,* 813 F.3d at 590.

### 3. Prima Facie Case

To establish a *prima facie* case of intentional discrimination under *McDonnell Douglas,* Mir must show that: "(1) [he] has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Id.* Once a plaintiff makes this showing, "a presumption of discrimination arises, and the employer must 'articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id.* (citation omitted). "The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id*. (citation omitted)

#### a. Judicial Estoppel

L-3 Communications argues that Plaintiff is judicially estopped from being a "qualified individual" by his representation to the SSA in 2006. L-3 Communications contends that Mir cannot prevail on his claim because his statements to the SSA bind him until at least 2013, when Mir updated his SSA application. When a party assumes a position, and succeeds in maintaining that position, such party may be judicially estopped from assuming a conflicting position solely because his interests are no longer the same. *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1713 (2017). Under the Social Security Act (the "Act"), "disability" means the " inability to engage in

any substantial gainful activity by reason of any . . . physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Although the ADA's definition of "disability" and the SSA's definitions are similar, "when the [Act] determines whether an individual is disabled for [disability benefits] purposes, it does *not* take the possibility of 'reasonable accommodation' into account." *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 803 (1999). Therefore, an application for disability benefits under the Act does not necessarily preclude a plaintiff from establishing a claim under the ADA; however, to defeat summary judgment a plaintiff must offer a sufficient explanation to reconcile his sworn assertions to the SSA regarding his inability to work and his claim that he was qualified for the position under the ADA. *Id*. at 806-07. A failure to explain the inconsistency will result in judicial estoppel of his ADA claim by the earlier statements regarding disability. *McClaren v. Morrison Mgmt. Specialists, Inc.,* 420 F.3d 457, 463 (5th Cir. 2005) (citing *Cleveland,* 526 U.S. at 807); *Equal Employment Opportunity Comm'n v. Vicksburg Healthcare, L.L.C.*, 663 F. App'x 331, 334 (5th Cir. 2016).

In his 2006 application to the SSA, Mir stated "that he was unable to work because of a damaged nerve in his right leg and a condition known as 'foot' drop." Def.'s App. 19:10-19:25. Mir testified in his deposition, however, that in 2007 he underwent another surgery to resolve a problem that transpired as a result of his 2005 hip replacement. Def.'s App. 39. Further, Mir testified that the surgery alleviated the issues that prevented him from working and that he was physically able to return to work in 2008. *Id.* Mir interviewed for the Position with L-3 Communications in 2011, which was three years after he underwent surgery to resolve the problem that prevented him from working.

The court is not persuaded by L-3 Communications's argument that Mir is bound by his statements to the SSA. Mir's statements regarding his inability to work occurred approximately five years prior to his interview for the Position at L-3 Communications, and Mir has established that he underwent corrective surgery to correct the injury. Moreover, L-3 Communications's argument that Mir's failure to update the SSA on his improved condition causes him to be bound to his earlier statements to the SSA is equally unpersuasive. As the court noted in *Cleveland*, "an ADA suit claiming that the plaintiff can perform [his] job with reasonable accommodation may well prove consistent with [a disability benefits] claim that the plaintiff could not perform [his] own job (or other jobs) without it." *Cleveland,* 526 U.S. at 803. The court finds that the reasoning in *Cleveland* applies to Mir's circumstances. Mir's statements to the SSA regarding his inability to work are consistent with his claim that he could perform the duties of the Position with reasonable accommodations. Therefore, the court determines that Mir has offered a sufficient explanation to reconcile his sworn assertions to the SSA regarding his inability to work and his claim that he was qualified for the Position under the ADA. Accordingly, Mir is not is judicially estopped from being a "qualified individual" by his representation to the SSA in 2006.

### b. *Whether Mir Was Qualified for the Position*

L-3 Communications further argues that Mir was not "otherwise" qualified for the Position. To determine whether a Plaintiff is qualified for a position within the meaning of the ADA, a court must determine whether an individual with a disability can show: "(1) [he] could perform the essential functions of the job in spite of [his] disability," or "(2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (internal quotation and citations omitted); *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 807 (5th Cir. 1997).

L-3 Communications contends that Mir did not meet the requisite minimum qualifications set forth in the job posting because he had no experience with "NC programming" or knowledge of "HDL Aircraft installation procedures." Def.'s Mot. Summ. J. 21. The record, however, establishes that knowledge of HDL Aircraft installation procedures was not a necessary minimum qualification, as stated in L-3 Communications's job posting for the Position. Def. App. 301. Experience with HDL Aircraft installation procedures was only an additional advantage for applicants. On the other hand, the job posting did state that a candidate for the Position "must" have NC programming knowledge. Def. App. 301. The record establishes that Mir did not meet this minimum requirement, as he conceded in his deposition that he had no experience with NC programming. Def. App. 100:11-100:24. Plaintiff contends that because he had extensive experience with more advanced software programming, he "would have easily been able to pick up NC programming." Pl.'s App. 83. Grant testified that he nonetheless brought Mir in for an interview to further determine whether Mir's experience was sufficient to qualify him for the Position. Def. App. 257:12-257:23; 286:14-286:24.

At the time of Mir's interview, by his own admission, he acknowledges that he is not otherwise qualified for the position. The court is aware of no authority that requires a prospective employer to accept a person for a position who does not meet all minimum qualifications. For the reasons herein stated, Mir fails to establish a *prima facie* case of discrimination for his disability. Accordingly, the court determines that there is no genuine dispute of material fact as to whether Mir was otherwise qualified for the position. As the court has determined that Mir cannot establish all of the elements of a discrimination claim under the ADA, the court need not discuss the remaining elements, and L-3 Communications is entitled to judgment as a matter of law.

### B. Prohibited Inquiries

The ADA also provides that an employer "shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A). L-3 Communications argues that Plaintiff's claim for improper inquiries regarding his foot injury fails because he lacks damages for this claim. L-3 Communications contends that "damages liability under section 12112(d)(2)(A) must be based on something more than a mere violation of that provision." Def.'s Mot. Summ. J. 27 (citing *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 562 (5th Cir. 1998)). The court agrees that damages liability must be based on something more than a violation of § 12112(d)(2)(A) of the ADA.

L-3 Communications contends that Mir has "failed to show any cognizable injury from any of Grant's alleged improper inquiries," and his sworn testimony forecloses the possibility of any such injury. *Id.* Mir contends that L-3 Communications's contention that he has no evidence of damages and that his testimony forecloses the possibly of damages is incorrect. Mir further contends that even if he did not suffer any actual damages as a result of Grant's improper medical inquiries, he is entitled to recover at least nominal damages.

The court will first address L-3 Communications's objections to Mir's summary judgment evidence. L-3 Communications objects to Mir's Second Amended Interrogatories. Plaintiff's First Amended Interrogatory Answer No. 8 provides, "[b]ecause of the stress and anxiety I have experienced from being passed over for a job I was qualified for because of my disability, I seek compensatory damages in an amount to be determine by the jury." Def. App. 185. L-3 Communications relied on this interrogatory answer in its Brief in Support of its Motion for Summary Judgment to establish that Mir lacked the requisite damages for his claim of improper

inquiries. Def.'s Br. 28-29. Plaintiff's Second Amended Interrogatory Answer provides as follows:

> [b]ecause of the stress and anxiety, and depression I have experienced from being passed over for a job I was qualified for because of my disability, *and because of the improper medical inquires Chad Grant made during my interview with L-3*, I seek compensatory damages in an amount to be determined by the jury.

Pl.'s App. 289-290 (emphasis added). L-3 Communications contends that the amended answer is invalid because: (1) Mir altered important evidence, (2) Mir's amendment prejudiced L-3 Communications, (3) there is no possibility of curing the prejudice with a continuance, and (4) Mir failed to proffer a sufficient explanation for the amendment.

Mir contends that the court should overrule Defendant's objection to its Second Amended Interrogatory. Mir argues that he amended Plaintiff's First Amended Interrogatory Answer No. 8 to comport with his prior deposition testimony and that Plaintiff's Second Amended Interrogatory Answer No. 8 did not add information that has not otherwise been made known. The court agrees. Mir testified in his deposition that he suffered mental anguish because L-3 Communications discriminated against him on the basis of his disability and because of the improper questions Grant asked during his interview. Pl. App. 108:7-109:14. In his amended answer to Interrogatory Question No. 8, Mir did not disclose any new information, therefore, the court overrules Defendant's objection and concludes that there is a genuine dispute of material fact as to whether Grant made improper inquiries in violation of § 12112(d)(2)(A) of the ADA.[*]

---

[*] L-3 Communications also objects to portions of Mir's Declaration submitted after his depositions. Defendant requests that the court strike a portion of Mir's declaration regarding his lack of knowledge on who made the decision not to hire him at L-3 Communications because Plaintiff's declaration is in violation of the "sham-affidavit rule," which states that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony. *See Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 247 (N.D. Tex. 2011), *aff'd*, 486 F. App'x 469 (5th Cir. 2012). Mir's Declaration does not contradict his prior deposition testimony. Mir testified in his deposition that he did not know who made the decision not to hire him at L-3 Communications. In his Declaration, Mir states that he believed Chad grant was the decision maker, which is why he sent Grant a follow-up letter after the interview. The court

## IV. Conclusion

For the reasons stated herein, the court **determines** that no genuine disputes of material fact exist with regard to Plaintiff's claim of ADA disability discrimination. Defendant is, therefore, entitled to judgment as a matter of law on this claim. The court **determines** that genuine disputes of material fact exist with respect to Plaintiff's claim of improper inquiries under the ADA. Defendant is, therefore, not entitled to judgment as a matter of law on this claim, and it remains for trial or other resolution by the parties. Accordingly, the court **grants in part** and **denies in part** Defendant's Motion for Summary Judgment Defendant's Motion for Summary Judgment (Doc. 40) for the reasons herein stated.

**It is so ordered** this 8th day of November, 2017.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge

---

has only considered evidence that is admissible pursuant to Rule 56 of the Federal Rules of Civil Procedure and the summary judgment standard herein enunciated. Accordingly, the objection is overruled as moot, except to the extent specifically addressed in this opinion.